Thank you. The next matter on calendar is Airlines For America v. City and County of San Francisco, 22-15677. We'll allow time for everyone to come forward and get situated. I would note that this case has a designation that each side has 15 minutes total. And I note that you've all brought someone else with you. But since I haven't been notified otherwise, I'm assuming one person will be making the argument for each side. Am I correct on that? Okay. Just want to make sure. All right. Good morning. Good morning, Your Honors. May it please the Court. I'm Shai Dvoretsky with Skadden on behalf of Airlines For America. If I could, I'd like to reserve three minutes for rebuttal. Okay. The market participation test asks a basic question. Is the challenged governmental action something that only a government can do so that it's regulatory, or did the government act as a private market participant might act in the same circumstances? The HAO is regulatory for three independent reasons. San Francisco acted in three ways that only a government can act. First, by imposing criminal penalties. Second, by imposing civil penalties. And third, by imposing extra-contractual terms by legislative fiat. First, the – Can I – I think we know the basic facts here. But I want to ask you, on the criminal, there's a misdemeanor that can be brought, correct? That's right. But the city has said that they're not going to do that. Is that enough to take that out of the equation? No, it's not. They've said they're not going to do it as a matter of – as a litigating position. But as a matter of law, the ordinance is written in a way so that the California statutes apply. The California statutes say that an ordinance is a misdemeanor unless it is by ordinance made an infraction. Nothing in the HAO makes a violation anything less than a misdemeanor. A misdemeanor is, of course, a crime. And under the Supreme Court's decision in ATA, where a government uses a tool that only a government can use, namely the threat of a criminal penalty, whatever they may say about it later in litigation, the ordinance allows them to impose a criminal penalty. Compliance is under threat of criminal penalty. That's something that only a government can do. Well, they don't mention it in the actual document, but it's out there separately. So my question is, okay, from a litigation standpoint, they're saying we're not going to do that. I'm understanding your position to be that there's, you know, we're the government, we're here to help, that just because you say you won't do that doesn't prevent someone else that would be in a similar situation. I mean, obviously people change, you know, all of that, and we know that administrations change and one may not enforce a certain law and then the next one chooses to look at it differently. We see that all the time. So is it your position that it's a misdemeanor alone? That should be the end of the inquiry right there? That is one of the three, yes, that is one of the three independent reasons why this ordinance is regulatory and why the city cannot invoke the market participation test, because violation is made a misdemeanor. The provision that a violation is a misdemeanor is in the statute, is that correct? It's in the California code. Code, yes. That's right. And so this, so does that mean that every regulation is criminal because it's subject to that statute? There are some exceptions. California has exempted some classes of ordinances from the code involving parking tickets, vehicle issues, things of that sort. So there are some exceptions. That's done by statute also. That is also done by California code. But the default rule under the plain language of the California code is that an ordinance is a misdemeanor unless by ordinance it's made an infraction. And in fact, some major municipalities within the state, like Los Angeles. If it's made an infraction, it's still, would that mean that it's regulatory? If it's made an infraction, that's still a lower level crime. It would still be, in your view, it would still be criminal, and so this would still be regulatory. That's right. Now, it might potentially be a different question if by ordinance rather than simply by litigating position, they actually said in the ordinance that it can be enforced only civilly. Perhaps that would be a different case. But they haven't done that yet. I'm not going to concede that. So really there's no way that the city and county can get out of this and impose this regulation and require health insurance at the airport. Well, I don't think they can for several reasons, but with respect to the criminal piece in particular, they don't have to proceed by ordinance outside of a contracting situation. The airport commission does enter into contracts with airlines, and if they were to negotiate this at the bargaining table, the way a private party would have to negotiate terms that it wants compliance with, without the threat of criminal enforcement, then that would take at least our criminal objection to this ordinance off the table. But its contract is with the airlines. I'm sorry? The contract you would have to negotiate in the contracts with the airlines. You would have to negotiate a contract between the airport commission and the airline in the same way that any private market participant would negotiate contracts with private parties for terms that it wants enforced. But no private participant can threaten criminal enforcement for violating the terms of the contract. Okay, but you also say that the civil penalties are such that those alone make them a regulator as well. That's right. Correct? I don't see any case law that says the civil penalties alone, anything exactly on point, make them a regulator. So I would see that position as somewhat of an extension. I'm not saying it's permissible or impermissible. But I want to hear your argument on that. But then I also want to know if the fact that the civil penalties that you're arguing that they're a factor, but that the totality of the circumstances that you pull in the possibility of a misdemeanor, is that a stronger argument than the civil penalties alone? So let me take the two questions. Let me start with the second. I know. I'm sorry. It's a little stream of consciousness here. Let me start with the second question. I think that the civil penalties and the criminal penalties are independent grounds for concluding. We only need one of them to win. They're independent grounds for concluding. This is regulatory. Obviously, whenever you have two independent grounds, that's a better case than when you have one independent ground. But I don't think that you need to combine them in order for us to win. I think we win under each one independently. As to your first question about civil penalties, the Third Circuit in the Triam case held squarely that civil penalties are enough, because civil penalties, like criminal penalties, are a tool that only the government can use. Why is that? Why are these civil penalties different from liquidated damages and all kinds of provisions that are in ordinary contracts? Let me give you an example. Under the ordinance, if an airline does not comply, the city can try to enforce the city option, which is $9.50 an hour into a city fund. That is what the HAO, by its design, treats as liquidated damages. But in addition to that, the city can also impose $100 a week per employee fine. That's not a measure of damages. The damages, the way the HAO thinks of it, are the $9.50 an hour. The $100 on top of that is purely punitive. And under California law, no private party could impose that kind of a penalty for noncompliance. Under California law, the only way you can have enforceable liquidated damages is if the liquidated damages are a reasonable estimate of the actual loss. Is the record developed on that point? Or is that just a no one in the private sector can do that? Do we, is there, I didn't see any factual findings on that in the record. So is there a case law, is there a case to that effect? Why is it more than just, it sounds like it might be logical, but how do I know that? I think you know it from the California Supreme Court's decision in the Ridgely case, which is at 17 Cal 4th at 977. And in that case, the California Supreme Court held that, and this is in a case involving private parties, a contractual cause purporting to predetermined damages must be construed as a penalty if the amount set does not represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. And quote, a contractual provision imposing a penalty is ineffective and the wronged party can collect only the actual damages sustained. So if you go beyond that, beyond an estimate of actual damages, that's not something that private parties could impose on one another for breach. And when the government does that, it does it only because it is a government actor that is imposing civil penalties. Civil penalties, again, to go back to your question, Judge Callahan, under the Third Circuit's decision in Triam, and as the logical consequence of the Supreme Court's decision in ATA, which was in the criminal context, civil penalties are a tool that only the government can use. Counsel, can I ask, can we consider the civil penalties under the Lacks test or the Cardinal Towing test, or are those just separate buckets completely? Hold on one sec. Is he a little mottled to you? I kind of hear, I don't know if your placement of your mic is not great. Can you hear me now? A little better. I mean, can you hear him okay? I mean, I hear yes and a little. Okay, say that, just say your question again. Sure. So my question was, can we consider civil penalties as part of the Cardinal Towing or LAX test, or is it a separate bucket completely? I think it's a separate bucket because LAX did not involve either civil or criminal penalties, or for that matter, an extra-contractual imposition of terms. In LAX, there was an agreement between the airlines and the authority running the airport. It did not impose criminal or civil penalties. The consequence to an airline for not complying with the agreement was to get kicked out of LAX. Now, we have our issues with the LAX case as well. Okay, so before you get there, so then my question is, to me the strongest civil penalty argument is the $1,000 per employee per day and a higher amount at the discretion of the airport director. So one, my question is, didn't that preexist, the HAO ordinance? And so how does that, if it wasn't a civil penalty before, how is it all of a sudden part of the civil penalty now that the HAO was passed? Two points on that, Judge Bumate. One, it preexisted in the sense that it was part of the QSP. Correct. But it did not preexist as a remedy for violation of the HAO because the HAO post-dated the QSP. And so by definition, if what California law requires is that liquidated damages to be enforceable have to be a reasonable estimate of the harm, the QSP couldn't have reasonably estimated the harm for violating the HAO, which didn't exist yet. So that's what I'm saying. But would you then say that the QSP was a civil penalty that could have taken this, you know, taken them out of market participation even before the HAO was passed? So that's my second point. I do think that in the QSP it was a civil penalty as well. We didn't challenge the HCAO because the HCAO was really drastically different than the HAO in its scope and its provisions. That was a lower level of health care required. It was for employees only, not for employees and their dependents. In addition to that, the costs were wildly different. The city option under the HAO is $9.50 an hour. The city option under the HCAO, which is what the QSP originally dealt with, was $2.80 an hour. And so for that reason, the airport director estimated that the cost of the HAO was $120 million annually. This is just a drastically different program. And so we didn't challenge the HCAO. But to answer your question conceptually, yes, that would have been a civil fine as well because it's not a reasonable estimate of damages when you have unfettered discretion by the airport director to impose whatever fine he or she wishes. Are you still asking? Go ahead. Just one quick follow-up on that. Am I correct that if there's a dispute over the $1,000 per day or the higher amount, then that goes to some sort of city agency to determine who to adjudicate? It's not a state court. It's a regulatory body, right? The enforcement action, I think, would go through that regulatory body in the first instance. That's right. I would like to ask you, and I'll give you a little time for rebuttal, but we just have to have our questions answered here. So the cardinal towing and LAX analysis, when do we have to get into this and analyzing this? So I don't think you get into it here because, as I was saying to Judge Bumate, LAX did not involve the imposition of extra-contractual terms that carried civil or criminal penalties. Now, if you were to change each of those three variables that I just articulated, no criminal penalties, no civil penalties, and all of this was negotiated at the bargaining table, well, then you might be in the world of LAX and having to apply that test. But we're several steps removed from that here. But don't you talk about your challenging the district court, whether it was proprietary, or don't you challenge those findings? We do. I think the ultimate question is whether, as I started out at the beginning of the argument, the ultimate question is whether the government acted in a way that a private participant would act or only in a way that a government could act. It is dispositive of that question. The government is not acting in the way that a private proprietor can act if the government imposes criminal and civil penalties extra-contractually. But in terms of, I think, didn't the district court say, okay, it makes sense because it's an airport, and I understood the city of San Francisco to say something, well, we need to have, we need to reduce turnover, you know, we need to have efficiency, we need to keep healthy people. They're more exposed in travel and all of those things. But you're saying that's wrong. You would say that they're doing it because they want everyone to have health insurance, and so essentially that's their pretextual reason. But how could we really attack what the district court said there? Isn't that a reasonable explanation? Two points, Judge Callahan. One, even if the city were acting purely for proprietary reasons, which of course I don't concede, but even if it were, that wouldn't matter because in ATA, the criminal case out of the Supreme Court, the Supreme Court's opinion said Los Angeles was acting for proprietary purposes. It didn't matter if the means that Los Angeles used in order to achieve its proprietary purposes were exclusively governmental. So none of those proprietary findings matter in light of the criminal and civil and extra-contractual aspects of this case. With respect to the proprietary purposes or the asserted proprietary purposes themselves, one, the HAO, when the city amended the HAO, it expressly said that it was undertaking the HAO, quote, only to promote the general welfare. That's an exercise of the government's police power. That's a 2ER140. And so that in and of itself is not a proprietary purpose. Okay, we're over, but let me see. I think if my colleagues have any additional questions. They don't. I'll give you two minutes for rebuttal. Okay. Thank you. Good morning. Good morning. Melissa Allison on behalf of the city and county of San Francisco. This case isn't about coercive government conduct. It's about a contract that the airlines bargained for. A4A is asking the court to rewrite the airline's contract under the guise of a preemption claim. The city of San Francisco itself has not imposed any civil or criminal penalties to coerce compliance with the HAO, and the government code doesn't mean what A4A says it means, which would effectively force San Francisco to impose criminal penalties in this case. So what is your best argument? And I started out on the other side with this misdemeanor criminal penalties. What's your best argument that the, quote, unquote, the hammer of criminal law set forth by the Supreme Court requires more than a possibility of criminal penalties? You heard your counsel, your friend on the other side, said that essentially you've taken a litigation position. Don't worry about that because we're not going to prosecute for any misdemeanors. But it still exists out there. Can you respond to that? Yes. It is a critical point, and it's not about a litigation position. It's about this case not being like American trucking. Even if, let's start with the premise that even if A4A were right about the interpretation of the government code, and they are not in our view, the HAO is not a regulatory enactment under American trucking because in American trucking it was the Port of Los Angeles itself that raised the hammer of criminal law. It included in its own ordinance criminal penalties against a terminal operator that did business with trucking companies that were unauthorized by the port. So the port, in that case, effectively used criminal penalties to coerce trucking companies to accept the port's preferred terms. Here, the city of San Francisco has not imposed any criminal penalties to enforce the HAO. It only applies— Well, do you dispute that there could be criminal penalties? We do dispute that. Well, tell me how they're wrong on that. Just because you say you're not going to, you know, that's sort of the argument where the government were here to help and we're not going to do it, but then someone else comes in and, you know, we all in court see administrations come and go and they change their positions. Yeah. To be clear, it's not simply a matter of we're not going to do it. I think one point I just made under American trucking, the threshold question, is that the city of San Francisco did not do it. It did not do it. But can you prosecute? Is there a statute that allows prosecution? In our view, no, because the city of San Francisco has no such statute and the government code does not mean what A4A says it means for the reasons we explain in our brief. So briefly, that is that the— Well, what does it mean then? What is it there for? It means that city or county ordinances, violations of city or county ordinances, cannot be prosecuted as felonies. They can be prosecuted as misdemeanors or infractions on the city's option. It's an authorization statute. Has any California court made that interpretation? Has any California court— Well, no California court has made the interpretation that A4A offers here, and if A4A's interpretation were right, it runs us directly into the home rule concerns and the duplication preemption concerns that are addressed in the city's brief. So the only way to— So to be clear, no California court has ruled in either direction? No California court has decided this precise issue, though I think the Tramburg Attorney General's case that the amicus cite certainly treats the government code as an authorization as opposed to dictating a particular criminal penalty. And again, there's a wealth of cases that we cite in our brief that show that if the government code were interpreted in the way that A4A proposes to interpret it, it would necessarily raise the home rule concerns and the duplication preemption concerns. So to avoid that, to avoid that result, which we say is a result that makes no sense, the only reasonable way to read the government code is the way that the city reads it here as an authorization. So there are two points that we highlight on this issue of criminal penalties that, you know, this is not American trucking because the city itself has taken no action to raise the hammer of criminal law. So let's say—but let's say, okay, hypothetically, and I'm not saying— because we haven't conferenced on this case. We don't—so we don't have—we haven't conferenced, and I can't speak for anyone. So hypothetically, if we didn't agree with you and we read the statute as the appellants are reading it, do you lose or can you still win? We could still win for the first point—for the first reason I raised, which is that under American trucking, the city of San Francisco's conduct has to be regulatory. The city of San Francisco has to raise the hammer of criminal law. And what the government code says doesn't tell you anything about what the city of San Francisco's conduct is, whether its conduct is regulatory or proprietary. So even if you read the code the way A4A does, under American trucking, the city's conduct was not regulatory. But can the city of San Francisco prosecute under that government code? In our view, no, because the government code doesn't mean that. But if the government code means what A4A says it means, then it would give prosecutors in the city of San Francisco the power to do that. But again, under American trucking, that doesn't get you far enough to make the action regulatory rather than proprietary because it's not the lawmakers in San Francisco, it's not the city of San Francisco that engaged in the regulatory conduct. So moving—unless there's further questions on criminal penalties, I can move to civil penalties? Yes, and then you can cover, too, that just hypothetically, if we didn't agree with you on the possibility of prosecution as a misdemeanor. Does that in any way factor into how the totality of the circumstances with the civil penalties and the possibility of prosecution as a misdemeanor? Right. So because I think I said to your friend on the other side that there isn't a case out there that says the civil penalties alone necessarily. And I said, would this be an extension? So, but if that would be an extension, does the possibility of a misdemeanor throw it over the top? Right. And that's correct, Your Honor. There is no case that finds that civil penalties or contract-like remedies like this alone are enough to make conduct so coercive as to be regulatory. What about—he said other circuits have said that, but what about— Mr. Dvoretsky and this district court in this case referred to the Tri-M case, a Third Circuit case, in which the court, the Third Circuit there, the structure alone could have been enough. That was not a contract case. Tri-M was a law that was independently enforceable from any contract. So it's entirely different than this case for that reason alone. The only reason that A4A must comply with— I'm sorry, the airlines must comply with the HAO here is because they contractually agreed to do so. So Tri-M is completely different from that situation. So the real question is whether contract-like remedies, which A4A is calling civil penalties, but really what they are is contract-like remedies, whether that's enough to take conduct out of the realm of— So how is the $1,000 fine and higher at the discretion of the airport director, which is then adjudicated before a regulatory body, how is that a contract remedy? Well, to start, A4A alleged in its complaint that it's a contract remedy. Paragraph 49 of its complaint, A4A acknowledged that— Oh, whatever we name it, but it's— It's in the contract. It's in the contract. The QSP is described by A4A itself, and this is accurate, as contractual terms. That's what the QSP is. So it is a liquidated damages provision, and it's been accepted by the airlines. For many years, the QSP predates the HCAO. Was that 2010? The HCAO was 2007. The QSP has been in place since 1999. That liquidated damages provision, the amount has changed over time, but the provision has been in place since 1999. I take it there's no case that says that only a government can invoke this kind of a remedy. No, that's right. If anything, the cases would suggest that this is akin to a liquidated damages provision in an ordinary contract. And what the district court said was, well, if there's a problem with this, let's figure it out when you try to enforce it. Precisely. Another way to say that is it can't be both unenforceable and coercive. If it's a contract remedy, then you have contract defenses, and a defense to a liquidated damages provision is it's unreasonable, and so it's not enforced. And if it's not enforced, it can't be a penalty. Well, doesn't that exist against civil fines also? Not necessarily. If a civil fine is unreasonable, unconstitutional, then it's unenforceable. Well, if it's unconstitutional, that may be the case, but that would be the argument you have. Or if it's preempted. Yeah, but a civil fine is not unenforceable because you argue that it's not a reasonable approximation of what the damages would have been, right? That's precisely why the conduct here is proprietary and not regulatory. The city has given up its ability to say we're imposing a fine. That dispute is before a city regulatory body? In the first instance, yes, the Office of Labor Standards and Enforcement can evaluate whether there has been a violation. So that's a huge distinction. I just don't know of any contract between private parties where the dispute then goes before a city regulatory body, which is one side of the other contract. It's also akin to private contractual provisions, though. We'll, again, start with the position here. Let's start with the point that the airlines have agreed to that provision in their contracts since 2010, and they re-upped it in 2021. So it's been contractually agreed. But then they're going to argue coercive on that, yeah, if you want to do business at the airport. Well, I think that's what they're arguing now. Well, I guess what you're saying in a way, you're trying to say it's sort of race judicata. They never challenged it before, and so now their challenges have less merit. I don't know whether I can go there on that. No, I'm not quite making that argument. I think the point, it's more of a factual point we're making, which is that it's the fact that the airlines have agreed to these very same remedies that they're now complaining of. Every single remedy is the same. The HAO included no new remedies. The fact that they're complaining of the very same remedies they've agreed to since 2010 demonstrates that those remedies are not coercive. And their entire argument here is based on the fact that those remedies are so coercive. But we do that all the time in contract law where parties agree to it, but then they challenge it after the fact that it's coercive, unconscionable. That happens all the time. Well, I think what's different about this case is that their entire argument that the market participation doctrine doesn't apply is that there's something inherently coercive about the conduct that the city has been taking and that they've agreed to since 2010. And the only thing that's changed here are the benefits thresholds, which now they're not happy with. And so they're effectively asking the court, oh, step in now, throw out the benefits threshold. But to be clear, going forward, the HCAO would still be in place and all of these remedies would still apply to the airlines. And they're not challenging that. So the remedies that they claim take this out of the proprietary realm into the regulatory realm will continue to apply, even if you throw out the benefits thresholds. So this isn't about coercive remedial measures. It's about a new contract term that A4I would prefer not to use. I think you have a good point there, though. It does seem like you have a good point. If we call it coercive, they have existed since the start in 1999 or wherever QSP started, but they just all of a sudden dislike this new provision. Yeah, this isn't about preemption. It's about we don't like the benefits thresholds now, so we're going to raise a preemption claim. And this court shouldn't get in between contractual terms between the two parties. I think they can bring it. I mean, I think, yes, I think all of it is you're saying, well, it was a good deal for them before, but now that they have to pay a ton of money, now they're looking further and that's the hook. But I don't think, I still think we have to independently analyze the coercive effect and whether someone's agreed to it in the past. You know, I guess that you say, like, well, it doesn't seem that credible. But now, but I guess what I'm seeing is both of you say they're saying, the appellants are saying no, you know, that no private party would be able to command these kind of civil penalties. You're saying, well, yeah, they could. But then I think Judge Bumate said, well, what's a little bit different about this is you've got the city interjecting itself in determining the penalties. So how do we really know from this record whether anyone would agree to it or not? And I do want to finish answering Judge Bumate's question about the administrative procedure. Okay, go ahead. And then I'll get to that. So, again, that is also, in addition to the fact that what we just talked about, the airlines have agreed to it for this whole time, it is akin to a, you know, alternative dispute resolution. I mean, private parties can choose to have extrajudicial ways to resolve their contracts, like arbitration provisions. And, in fact, there is judicial review of any decision by, you know, the city of San Francisco's, you know, agencies here. That judicial review is actually more searching than judicial review under an arbitration provision. So the effect of that is that it's a writ of mandate to superior court so they can look at whether there's review of an arbitration, you know, proceeding as simply did the arbitrator have jurisdiction. And you're saying they could have negotiated for an arbitration instead of this forum if they wanted to? Well, I suppose what I'm saying is a little different, which is it's akin to it. And, in fact, I think, though I'm sure they won't acknowledge this, that they probably prefer this to an arbitration provision given the judicial review that's available. I can address a few of the other remedies in the contract that A4A tries to describe as civil penalties. One was the city option, which is what Mr. Javreski began talking about. The city option, which is the alternative payment provision, is not a, as a factual matter, it's not a remedy at all. It's not a penalty at all. It is a way to comply with the HAO. It's not to punish the airlines for anything. That money goes into the city fund and it's made available through medical reimbursement accounts for the very benefits that the HAO is offering. So the purpose of that is to provide the very benefits under the statute. It's a way to perform the obligation. But the beneficiaries of the city fund are broader than the covered employees here. Is that right? The city fund also applies to certain beneficiaries under the health care security ordinance. But under the HAO, an alternative option for complying with the new benefit threshold is to pay this amount into the city fund so that the employees can use that amount for health care services. And that's, in fact, what's been happening. There's no evidence in the record that that's not happening. That's what it's used for. Do other parties pay into the city fund besides these airlines? The city fund, yes. So the HSCO, the health care security ordinance, applies to other workers in the city and they also pay into this fund. That's right. And the other types of remedies that A4A tries to describe as civil penalties are things like debarment, which is also found in ordinary contracts between private parties and you find provisions regularly which say if you breach the contract, we're not going to do business with you for some period of time. And we talked about the liquidated damages provisions under the contract. Let me find out. Since we've taken a fair amount over, do either of my colleagues have additional questions? Yes. Okay. That being said, why don't you wrap up in 30 seconds? Thank you, Your Honor. I will end with this is not a case about civil penalties. It's not a case about criminal penalties. This court should apply the cardinal towing test as it did in the LAX case, and for the very same reasons that the city of Los Angeles was a market participant in that case, the city of San Francisco is a market participant here. On that point, I want to make one factual correction to something I heard earlier, which is that the city of Los Angeles in the LAX case, the board required through formal action the provision in the contract at issue there, the labor peace provision. So it was suggested that the airport sat down with everyone who signed that provision and negotiated that contract. It's no different than what happened here. The board of airport commissioners in Los Angeles, through a formal action, said going forward, all of these airline service providers have to have this agreement in their, have this provision in their contract. There is no meaningful factual distinction between the LAX case and this case, and for all the same reasons, the cardinal towing test should apply in exactly the same way here. Okay. Thank you for your argument. Okay. Appellant, since we've taken them over, we took you a little over, I think if I give you three minutes for rebuttal, that'll about even it out math-wise. So go ahead. All right. Thank you. Let me start out emphasizing, we haven't agreed to the HAO. The city argues that this is like LAX because in LAX, going forward, the city required certain terms. Well, going forward, what happened here is that when the leases were extended, we expressly reserved our rights to challenge the validity and enforceability of the HAO and not be prejudiced by the extension in doing so. So we haven't agreed to the HAO. Even if we had agreed to the HAO, you can't agree to criminal and civil penalties. That is something, you can't agree to criminal penalties at all, and with respect to civil penalties, that is something, again, that only a government can impose. That, Judge Callahan, to go to your earlier question, that's not an extension of existing law. The Third Circuit recognized that in TRIAM. It is called an extension, I suppose, but it's the obvious logical consequence of the ATA case, which talks about tools that are exclusively governmental. With respect to the criminal piece, this California Code provision is not an authorization statute. The California Code specifically says it is a misdemeanor unless otherwise made an infraction. As soon as it is a misdemeanor, at that point, the tool of criminal enforcement is available to the government. Judge Bumate, to answer your questions about whether any courts, California courts, have read the statute in this way, I'd point you to the Minor case, which is at 96 Calat 429, and also the Sahab case. That's a federal district court case, but nonetheless is interpreting California law. I think the city's entire argument on the California Code provisions is that it would somehow be absurd to read them to mean exactly what their plain language is. First, the court should construe the statutes according to their plain language regardless, but second, there's no absurdity here. By default, these are misdemeanors. They can still be enforced civilly only. The fact that they're misdemeanors doesn't mean that a city has to bring criminal, has to enforce them criminally. They can still be enforced civilly only. There are numerous ordinances that can't even be violated by private parties anyway, so it's not an issue as to private parties, whether they're civil or criminal. And many municipalities, Los Angeles, Oakland, others, have repeated this same language that's in the California Code, so they don't think it's absurd for violations of an ordinance to be treated as a misdemeanor. With respect to the civil penalties, just going back to that, Judge Callahan, you asked about the record question. I think the point here is the city has the burden on the market participation test. It would have to show that what they call liquidated damages are reasonable estimates of harm. It hasn't even tried to do that. It hasn't even tried to carry its burden of doing that. San Francisco, and so lastly, as to the $100 a week provision I want to emphasize, that's not in the QSP. That is exclusively in the HAO itself, and so that is a requirement of law. There's no argument that that is a contractual provision and that that's an unenforceable provision that only the government can impose. What's wrong with that one? That one does seem like liquidated damages. What's wrong with it is that it's on top of the city option. The city option provides for a $9.50 an hour payment into the fund. That's what's supposed to, under the HAO's design, replicate the cost of providing the platinum-level health care. If the airline doesn't provide the platinum-level health care, the airline pays $9.50 an hour into the fund, and the city, they say, will provide the benefits. $100 a week on top of that goes beyond estimating loss. That's just a penalty, and in a private contract, you can't agree to that. The only way the city can enforce that is because the city is acting as the government and as a regulator. Thank you. All right. I don't think we have any additional questions, and we've gone over both times, but I want to thank both sides for a very well-prepared and argued case. We always appreciate on difficult cases when the parties are so adept with their arguments and the record. Thank you both. This matter will stand submitted.
judges: SCHROEDER, CALLAHAN, BUMATAY